UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
No. 5:20-CR-26-DCR-MAS

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                                          )<br>                   Plaintiff           )<br>                                                          )<br>vs.                                                    )<br>                                                          )<br>CHEIKH GUEYE,                             )<br>                                                          )<br>                   Defendant       )<br>                                                          ) | **Memorandum Supporting Defendant's Motion for Downward Departure or Variance** |

Cheikh Gueye fled his home country, aborting suddenly completion of a higher education degree, and is present in the United States based on a determination that, at least on its face, he faces a well-founded fear of persecution based on his sexual orientation, a characteristic so central to one's humanity that many states and localities have laws and ordinances prohibiting discrimination based on it. Our Nation also views it as so central that it groups persecution based on sexual orientation in a class that will allow the greatest privilege the United States can offer: asylum, the ability to stay here, live in peace and make a life.

The record, particularly the forensic report prepared by BOP personnel, indicates that Gueye's inability "to come to grips with his sexual orientation" is a but for factor in his commission of the crimes to which he has pleaded guilty. Accordingly, the Court should grant a downward departure pursuant to U.S.S.G. §§ 5H1.3 and/or 5K2.11. Should the Court find that neither of these guideline sections are applicable, a variance pursuant to 18 U.S.C. § 3553(a) is warranted.

### Statement of Facts

**Gueye's Background and Personal History**

1

Cheikh Gueye is a native and citizen of Senegal, a west African nation and former French colony (until 1960) whose capitol, Dakar, occupies the westernmost point on the African continent.[1] It is an impoverished land riven with political, social and, perhaps most importantly, tribal conflict. *Id.* Senegal's population is about 15.4 million; 39% of its people live in poverty; 75% of its families suffer chronic poverty.[2] Senegal's GDP for 2019 is reported at 23.58 billion U.S. dollars; in comparison, Kentucky's GDP for 2019 is reported at 190.81 billion U.S. dollars.[3]

Islam has had a significant presence in what is now Senegal since the 11th century and some 96% of Senegalese are Muslims.[4] Traditional Islam strongly condemns homosexuality and this holds true as enduring public policy in Senegal; Amnesty International reports that same-sex sexual relations are subject of up to five years imprisonment and prosecutions remain active.[5]

By American standards, Mr. Gueye's upbringing was rag-tag, and he lacked parental supervision, although benefitting from his grandmother's aid and support. He was victimized sexually as a child. Nevertheless, he was guided sufficiently to both gain an advanced education and to develop a strong work ethic. He considers himself a serious adherent to Islam, although unforgiving to himself regarding his perceived shortcomings.

Gueye's homosexuality has plagued him with depression and self-loathing since at least his teenage years. The Forensic Report (DE 55) discusses this issue thoroughly and provides the Court with the necessary and pertinent information.

---

[1] https://www.britannica.com/place/Senegal.
[2] This information per the United Nations' World Food Program, https://www.wfp.org/countries/senegal.
[3] https://tradingeconomics.com/senegal/gdp; https://www.statista.com/statistics/187878/gdp-of-the-us-federal-state-of-kentucky-since-1997/.
[4] https://en.wikipedia.org/wiki/Islam_in_Senegal#.
[5] https://www.amnesty.org/en/countries/africa/senegal/report-senegal/.

The Court is particularly referred to "Clinical Formulation" on page 7 of the forensic report.

Within an hour or so of being apprehended by the Paris police, Gueye, after waiving his Miranda rights, was interviewed by two Paris police officers. The interview is remarkable as within 10 minutes the officers are commiserating with Gueye, stating to him "You're not a bad guy. I can see that." Later, the police in response to Gueye's statement, "I had no intention of hurting anybody" state "That was obvious."

## Argument

### The Court Should Grant a Downward Departure or a Variance Based on the Circumstances Leading Gueye to Commit the Robberies

The record would support a finding by the Court that Gueye's inability to "come to grips with his sexual orientation" is a but for factor as to his commission of the robberies. But for the emotional and mental anguish Gueye has suffered and is suffering on account of his sexual orientation, he would not have committed the robberies. This is not an excuse; it is an explanation and one warranting both a downward departure and a variance.

The Forensic Report supports the aforementioned but for finding based on at least the following:

(1) "Mr. Gueye has not come to grips with his sexual orientation." Forensic Report at p. 7.

(2) "He has strived to fit into his traditional Senegalese immigrant community by "passing" as a straight man. Doing so had brought on a significant amount of emotional distress, including suicidal ideation." *Id.*

(3) "[O]nce his wife learned of his sexual orientation and threatened to "out" him to the community, Mr. Gueye became overwhelmed, desperate, and

3

suicidal. He decided to pursue a suicide plan, which involve the instant offense conduct." *Id.* These observations would support a finding that but for the emotional turmoil and mental anguish Mr. Gueye suffered from his sexual orientation, he would not have committed these crimes.

U.S.S.G. § 5H1.3 was amended in 2010, and the Sentencing Commission transformed it from disfavoring a departure based on mental or emotional conditions to stating, in pertinent part as follows: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical case is covered by the guidelines." Research has not yielded a case where crimes were committed by a defendant, who intended thereby to cure and end long-standing mental anguish and emotional turmoil that had pushed him to the very edge. It appears inescapable that this is a case where mental and emotional conditions are present to a very unusual degree and do very powerfully distinguish this case from the heartland or typical case.

U.S.S.G. § 5K2.11 has been very, very sparingly referred to. It refers to unique circumstances where the interest in punishment or deterrence is reduced. Society's interest in punishment is reduced where the individual's commission of a crime is motivated by an impulse toward self-destruction rooted in his sexual orientation. The circumstances would seem so particular and aberrant that the interests of deterrence would seem minimal at best, if not nearly nonexistent: there is not a pool of possible offenders contemplating bank robberies as the means to deal with their own self-loathing and perceived social isolation.

If the Court were to conclude that neither U.S.S.G. §§ 5H1.3 or 5K2.11 applied and supported a downward departure, it should find, nevertheless, pursuant to 18 U.S.C. § 3553(a)(1) that "the nature and circumstances of the

4

offense and the history and characteristics of" Mr. Gueye warrant a substantial variance. Section 3553 is routinely invoked in support of a variance request; the factors here are so removed from typical cases that a compelling case for a variance is present.

The PSR increases the adjusted offense level by two levels pursuant to U.S.S.G. § 3D1.4, a multiple count adjustment. The applicability of this increase is supported by the text of the guidelines to be sure. But given the nature and circumstances of the offenses, given their but for causation, this case does not present the type of crime spree where the multiple count adjustment serves its best and proper use. Here, its application overstates Gueye's culpability.

The other statutory factors do not weigh contrary to either a departure or a variance. If someone who robbed the banks to get the money, because they wanted to buy drugs with it or because they were too lazy and indolent to work would be in line for a guidelines range sentence, Mr. Gueye presents a compelling case for a significant departure and/or variance.

**Conclusion**

Gueye has filed simultaneously herewith an objection to the PSR; that filing argues that his correctly calculated adjusted offense level would be 23, not 24 as stated in the PSR. Here, Gueye urges that the multiple count adjustment under U.S.S.G. § 3D1.4 serves to overstate his culpability. For the reasons set out above, the Court should depart downward and/or vary and impose a sentence of 24 months imprisonment. Gueye has a well-established need for continued mental health counselling. The Forensic Report recommends his enrollment in the RDAP program; Gueye accepts that recommendation. The Court should incorporate these needs into the terms of supervised release.

Respectfully submitted,

BY:  s/Robert L. Abell
ROBERT L. ABELL
120 N. Upper St.
Lexington, KY 40507
859-254-7076 (phone)
859-281-6541 (fax)
E-mail: Robert@RobertAbellLaw.com
COUNSEL FOR DEFENDANT

**Certificate of Service**

I certify that on May 11, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:  All Counsel of Record.

BY:  s/Robert L. Abell
Robert L. Abell
COUNSEL FOR DEFENDANT

6