UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 20-026-DCR |
| ) | |
| V. ) | |
| ) | |
| CHEIKH GUEYE, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Cheikh Gueye pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). The matter is scheduled a sentencing hearing on Friday, May 21, 2021. Gueye has objected to the portion of his Presentence Investigation Report ("PSR") assigning a three-level enhancement for possessing a dangerous weapon under United States Sentencing Guidelines § 2B3.1(b)(2)(E). [Record No. 56] This objection raises both a legal and factual issue for resolution. Although not surprising, it is unfortunate that the United States has not taken a position regarding this particular objection.[1] But notwithstanding the government's stance on this issue, the Court is obligated to correctly calculate the applicable guideline provisions before imposing a sentence in this matter.

---

[1] The parties have made certain recommendations regarding sentencing guidelines calculations in paragraph 5 of their plea agreement. Because they did not include an enhancement to the base offense level for possession of a dangerous weapon under § 2B3.1(b)(2)(E) of the 2018 edition of the United States Sentencing Guidelines, the government simply states in its response to the defendant's objections that it "is bound by its recommendation of the two-level enhancement in the plea agreement." [Record No. 58] Presumably, the United States' reference to being bound to a two-level enhancement is intended to refer to a two-level increase in the defendant's base offense level under § 2B3.1(b)(2)(F) of the guidelines.

- 1 -

Because the Court must make a finding regarding the objective dangerousness of the weapon, ruling will be reserved on the factual part of the defendant's objection. However, legal issue presented by Gueye's objection will be overruled for the reasons explained below.

## I.

Gueye robbed two federally-insured banks in Lexington, Kentucky on December 11, 2019. A sum of $ 7,881.01 was taken from both institutions. Gueye admitted the following facts in his plea agreement and at the time his guilty plea was accepted by the Court:

> Defendant admits that he committed the robberies during which he wore a hoodie jacket, carried a backpack and wore sunglasses. At both banks, he passed tellers a note and told them to give him all the money in the drawers or he would kill everybody. Defendant carried a toy gun in the waistband of his pants and took measures to make it visible to the bank personnel. Defendant did not brandish the toy gun during either robbery. Shortly after the robberies, defendant surrendered without incident to the police. Subsequently and after being read his rights, defendant made a lengthy, detailed statement admitting to committing the robberies and explaining his purpose and motivation for doing so. A search of his backpack, which he had with him at the time of his arrest, revealed the exact amount of money taken from financial institutions that day.

[Record No. 36, p. 2] Gueye contends that he committed the crimes because he was depressed, and he hoped that he would be killed by law enforcement officers. [*See* Record Nos. 57-1, pp. 3-4; 59, p. 1.]

Gueye's PSR contains a calculation of his recommended United States Sentencing Guidelines Range. Both counts carry a base offense level of 20. U.S.S.G. § 2B3.1(a). A two-level increase is applied because the defendant admitted to taking the property of a financial institution. U.S.S.G. § 2B3.1(b)(1). A three-level increase is added because the defendant possessed a dangerous weapon during the robbery (i.e., "the dangerous weapon

enhancement"). U.S.S.G. § 2B3.1(b)(2)(E).[2] Thus, the adjusted offense level for both counts is 25. The combined adjusted offense level is 27. U.S.S.G. § 3D1.4. However, it is further recommended that the defendant receive a three-level decrease for acceptance of responsibility, reducing the total offense level to 24. U.S.S.G. § 3E1.1. The defendant's resulting guidelines range for imprisonment is 51 to 63 months.

Gueye objects to the application of the three-level dangerous weapon enhancement. [Record No. 56] He suggests that he should be subjected to the lesser, threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F). That provision only increases the base offense level by two points, which would reduce Gueye's total offense level to 23 and his advisory Guidelines range for imprisonment to 46 to 57 months.

## II.

U.S.S.G. Section 2B3.1(b) applies enhancements to the base offense level for robbery based on specific offense characteristics. Section 2B3.1(b)(2) lists, in descending order of severity, different enhancements that apply based on the potential injury posed to others by the defendant's conduct. The use of a firearm triggers a more severe enhancement than the use of a dangerous weapon which, in turn, triggers a more severe enhancement than a threat of death.

As relevant here, a three-level enhancement to the base offense level applies where a defendant commits a robbery during which he "brandishes or possesses" a "dangerous weapon." U.S.S.G. § 2B3.1(b)(2)(E). The commentary to Section 2B3.1 provides that:

> an object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) if (A) the object closely resembles an instrument capable of inflicting death or serious bodily injury; or (B) the defendant used the object in a manner that created the impression that the object was an instrument capable

---

[2] The probation officer did not include the parties' recommended two-level increase under section 2B3.1(b)(2)(F) for making a threat of death.

of inflicting death or serious bodily injury (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 2B3.1 cmt. n.2.

On the other hand, a two-level enhancement applies if a defendant makes a "threat of death" during the robbery. U.S.S.G. § 2B3.1(b)(2)(F). Again, the commentary sheds light on conduct which triggers this enhancement:

> "A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. . . . [T]he defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute a threat of death. . . .

U.S.S.G. § 2B3.1 cmt. n.6.

### III.

Gueye acknowledges that these provisions are applicable. In fact, he concedes that the weapon he possessed may be considered a dangerous weapon under the commentary to Section 2B3.1. [Record No. 56, p. 2] He argues, however, that the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), categorically precludes the Court from finding that the item he carried during the offense was a dangerous weapon. In *Havis*, the Sixth Circuit held that commentary to the United States Sentencing Guidelines only binds courts where it is an interpretation of, rather than an addition to, the Guidelines. 927 F.3d at 386. Since *Havis*, the court has often paused to consider whether conduct included in commentary to the Guidelines impermissibly expands the scope of a provision. *See United States v. Hill*, 963 F.3d 528, 531 (6th Cir. 2020) (commentary "binds us only if the guideline

which the commentary interprets will bear the construction"); *United States v. Flores*, 974 F.3d 763, 765 (6th Cir. 2020) (considering whether the commentary's definition "accord[ed] with dictionary definitions of the term 'serious' as used in the context of an injury"); *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021) (the commentary definition did not "fall within the zone of any ambiguity in th[e] guideline") (quotation omitted).

But in several other decisions, the Sixth Circuit has expressly found that imitation weapons may constitute dangerous weapons. For example, in *United States v. Medved*, 905 F.2d 935, 939 (6th Cir. 1990), the court concluded that the use of a toy gun during a bank robbery could support a conviction under 18 U.S.C. § 2113(d), which criminalizes bank robbery that "puts in jeopardy the life of any person by the use of a dangerous weapon or device." The court reasoned that the toy gun: "looked like a real gun"; was "identical" to a real model; and tricked bank personnel into believing that it was a real gun. *Medved*, 905 F.2d at 939. It also approvingly cited reasoning from the Ninth Circuit, which relied on the risks to public safety that are heightened by law enforcement's proportionate response to the threat of a realistic, albeit fake, firearm. *Id.* (citing *United States v. Martinez–Jimenez*, 864 F.2d 664, 666-67 (9th Cir. 1989). The court's holding in *Medved* did not depend upon commentary to a section of the United States Sentencing Guidelines.

Likewise, in *United States v. Woodward*, 24 F.3d 872 (6th Cir. 1994), the court upheld a *sentencing enhancement* for brandishing a toy gun during a bank robbery. The Court specifically focused on whether the bank personnel "believe[d] that the toy was a real gun." *Woodard*, 24 F.3d at 873. Considering the circumstances—the gun "appeared" to be real, the tellers had "immediately handed over the money" although they were "unsure" whether it was a toy, and the lower court had concluded that a photo of the gun looked realistic—led the court

to uphold the enhancement. *Id.* at 873-74. The court specifically noted that the standard for determining whether a weapon is dangerous is "not the subjective state of mind of the victim teller, but an objective standard." *Id.* at 874. Moreover, "[e]ven if the tellers . . . recognize[d] that the gun was a toy gun, a police officer, for example, who was stationed in the bank," may perceive "the toy silver revolver as a dangerous weapon that could engender a violent response." *Id.* And while the Court in *Woodard* cited the application note 1(d) to section 1B1.1 in defining a dangerous weapon, it relied upon its earlier holding in *Medved*, *supra*, for its ultimate conclusion that a three-level enhancement was appropriately applied.

This objective standard was again applied in *United States v. Rodriguez*, 301 F.3d 666 (6th Cir. 2002). There, the court reasoned that "[t]he ultimate inquiry is whether a reasonable individual would believe that the object is a dangerous weapon under the circumstances." *Rodriguez*, 301 F.3d at 668. The court found that a Styrofoam sandwich box, which the defendant had claimed contained a bomb, was reasonably regarded as a dangerous weapon. *Id.* at 668-69. Specifically, the defendant had acted in a manner that would lead bank personnel to believe the object was a bomb, the box was large enough to hold a small bomb, and the defendant clearly intended for the public to believe his threats. *Id.* at 669.

Dicta in *United States v. Wooten*, 689 F.3d 570 (6th Cir. 2012), may mark the outer limits of what would be considered a reasonably dangerous weapon under the circumstances. In *Wooten*, the court considered whether a defendant's threat was sufficient to support a sentencing enhancement under the lesser, threat-of-death enhancement, § 2B3.1(b)(2)(F). The court reasoned that it may be "objectively unreasonable" for a victim to believe that a robber has the "intent or ability to carry out a violent act" under the circumstances. *Wooten*, 689 F.3d at 576. For example, where "[a]n offender who walks into a bank *waving a banana* or what is

- 6 -

*plainly a toy gun*, for instance, would not instill a fear of death in a reasonable person, even if the offender emphatically announced his possession of a gun." *Id.* (emphasis added). If that were the case, the court reasoned that not even the threat-of-death enhancement would apply. *Id.*

The upshot of the holding in these cases is that the Court must make a finding that the item admittedly possessed by Gueye was reasonably dangerous under the circumstances, applying an objective standard. And although the Sixth Circuit does not appear to have directly addressed whether the commentary to Section 2B3.1 is binding after *Havis*, these cases have not been overruled. Thus, the Court will consider whether the weapon was objectively dangerous and whether the enhancement applies at the scheduled sentencing hearing.

**IV.**

Nevertheless, Gueye's *Havis* argument is unavailing. The commentary here is not analogous to the provision in *Havis*, which added to a list of "controlled substance offense" by including *attempted* controlled substance offense. 927 F3d at 385. Because commentary is intended to interpret the Guidelines, its interpretation may only add a construction that the guideline itself can bear. *Id.* at 386. In *Havis*, the Sixth Circuit reasoned that adding crimes through commentary to a guideline that already listed covered crimes deserved no deference. *Id.*

Here, while it is true that the term "dangerous weapon" is not defined in the guidelines provision itself, the context indicates that it requires interpretation. As previously mentioned, § 2B3.1(b)(2) lists six sentencing enhancements in order of their decreasing severity. The first three enhancements are triggered by discharge, use, or brandishing a "firearm." The next two concern the use, brandishing, or possession of a "dangerous weapon." And the final

enhancement applies where a defendant merely makes a "threat of death." The greatest enhancement, for discharging a firearm, increases the base offense level by 7, while the threat-of-death enhancement carries only a 2-level increase. Thus, different circumstances lead to different guidelines enhancements. And each circumstance is triggered by the type of danger and/or threat posed to the robbery victim. The commentary merely elaborates on the substantiality of the threat that must be posed to trigger an enhancement.

The guidelines dictate this focus on the circumstances surrounding the threat. A different provision provides a detailed framework for applying enhancements where a victim suffers "bodily injury." U.S.S.G. § 2B3.1(b)(3). Section 2B3.1(b)(2) is concerned with potential injuries—*i.e.* through "discharge" of a firearm or "possession" of a dangerous weapon that may or may not lead to bodily injury. Thus, the commentary to Section 2B3.1(b)(2) rightly focuses on the potential threat of injury based on the circumstances. It does not *add* to the list, for example, by including *all* weapons regardless of their potential dangerousness. Nor does it improperly include objects that the term cannot reasonably bear, such as controlled substances; while dangerous, drugs do not constitute weapons as that term is ordinarily used or defined by the Guidelines. *See* U.S.S.G. § 1B1.1 cmt. n.1(E).

The defendant ignores this context in favor of viewing the term "dangerous weapon" in isolation. He cites several dictionary definitions that unanimously tie the term to the possibility of bodily injury. But the defendant impermissibly assumes, contrary to the Sixth Circuit precedents cited above, that a fake gun used by a criminal cannot result in bodily injury. *See Woodard*, 24 F.3d at 873. And there is no basis in the guideline for finding a limit on the word "dangerous" that would exclude objects that merely appear dangerous. In fact, under Gueye's definition, a person who assembled a bomb to execute a robbery, but who happened

to make a mistake that rendered it inoperable, would not be eligible for the dangerous-weapon enhancement because the bomb did not, in fact, pose any danger of bodily injury. Nor, if the only permissible focus were on possible physical injury rather than a weapon's appearance, would it make sense for the United States Sentencing Commission to equate brandishing *and* possessing a dangerous weapon. Why would it be necessary to specify that brandishing a dangerous weapon triggers a sentencing enhancement if the weapon's potential for bodily injury is the only concern? The commentary provides an answer: a weapon may be dangerous because it is intended to appear dangerous, regardless of its ability to inflict harm.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Cheikh Gueye's legal objection to the application of the dangerous weapon enhancement is **OVERRULED**. However, the Court's ruling regarding the objective dangerousness of the weapon possessed during the offense is **RESERVED** until the sentencing hearing presently scheduled for May 21, 2021.

Dated: May 13, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky